**In re the Commitment of J.M.F., Minor, Appellant–Respondent,**

v.

**STATE of Indiana, Appellee–Petitioner.**

No. 55A05–9906–CV–260.

Court of Appeals of Indiana.

Dec. 17, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-respondent J.M.F., a minor, appeals his involuntary commitment to an outpatient therapy program, ordered by the trial court on May 18, 1999. Specifically, J.M.F. contends that the trial court erred in (1) placing him in an outpatient program without the recommendation of a physician; (2) placing him into an outpatient program without an advisement to the court by a representative of the program that he would be immediately admitted into the program; (3) conditioning his continued placement in such a program upon the actions of non-parties over whom the court had no control; (4) retaining jurisdiction to unilaterally transfer him to an inpatient facility without a hearing; and (5) finding that he currently suffers from major depression. We address the first two issues which Field raises because we find them to be dispositive.[1]

### FACTS

The facts relevant to our review reveal that J.M.F., a minor, was placed in Pleas-

William Van Der Pol, Jr., Martinsville, Indiana, Attorney for Appellant.

1. We note that the State concedes error on every issue raised by J.M.F. We are particularly puzzled by the State's agreement that a commitment order cannot be made contingent upon the actions of parents. It is true that the legislature provided, in our statutory schemes for delinquent children and children in need of services, that parents are parties to such actions. IND.CODE §§ 31–34–9–7, 31–37–10–7. It is also true that the provisions for mental health commitments of children do not explicitly designate parents as parties. IND.CODE §§ 31–37–18–3, 12–26–8–1 *et seq.* However, we see nothing in the statutory scheme for mental health commitments which precludes parental involvement if parents are provided with proper notice and a meaningful opportunity to participate in the proceedings. In addition, common sense dictates that a trial court's order involuntarily committing a child deprives a parent of custody just as a CHINS determination can, and thus parents ought to be parties to such proceedings. Furthermore, our legislature intends to provide for outpatient mental health services rather than inpatient services whenever possible, thus making parental involvement in a child's commitment a necessary component of the commitment order. IND. CODE § 12–7–2–82 (for purposes of I.C. § 12–26 a facility is a "psychiatric hospital, a community health center ... (a) where a mentally ill individual can receive rehabilitative treatment ... in the least restrictive environment suitable ...") Because we dispose of this case on other grounds, we only observe here that our society would benefit from legislative guidance regarding who is a party in mental health commitments of children.

ant Run Children's Home by an order of the Morgan County Juvenile Court following a charge that he had sexually molested his younger sister. J.M.F. has a mental health history which includes diagnoses of conduct disorder and depression.

On February 26, 1999 the deputy prosecuting attorney for the county filed a petition for involuntary commitment. Commitment hearings were held on April 16, 1999 and May 17, 1999. During those hearings, J.M.F.'s examining physician, Matthew Galvin, M.D. recommended that J.M.F. be placed in an inpatient or residential facility, but not an outpatient program. This testimony reiterated Galvin's assertions in the written record.

Furthermore, although a representative from the local mental health facility, South Central Community Mental Health (South Central), was subpoenaed to appear at the commitment hearing, no one from the facility appeared or testified at the hearing. The trial court found that J.M.F. should be placed in an outpatient program at South Central.

## DISCUSSION AND DECISION

J.M.F. contends that the trial court violated certain statutory requirements involved in making outpatient mental health placements. Specifically, he maintains that the trial court erred in failing to ascertain that he was eligible for immediate placement in an outpatient program and in making such a placement without the recommendation of his physician.

■ Only where all of the statutory elements for outpatient placement are met may the trial court order an individual to an outpatient therapy program rather than to an inpatient program. *Matter of Tarpley*, 581 N.E.2d 1251, 1252 (Ind.1991).[2] Current statutory requirements provide that:

**2.** *Tarpley* discusses the requirements for outpatient commitment of IND CODE § 16–14–9.1–

If a hearing has been held under IC 12–26–6 or IC 12–26–7 and the court finds that the individual is:

(1) Mentally ill and either dangerous or gravely disabled;

(2) Likely to benefit from an outpatient therapy program that is designed to decrease the individual's dangerousness or disability;

(3) Not likely to be either dangerous or gravely disabled if the individual complies with the therapy program;

(4) Recommended for an outpatient therapy program by the individual's examining physician;

the court may order the individual to enter a therapy program as an outpatient.

I.C. § 12–26–14–1. Furthermore, the court is required by statute to assure an immediate place in an outpatient facility for the mentally ill person: "Before the court may issue an order [regarding outpatient commitment] ... a representative of an outpatient therapy program approved by the court must represent to the court that the individual may enter that program immediately." I.C. § 12–26–14–2.

■ In this case, the trial court failed to comply with both of these statutory requirements. First, there is no indication from the record that an examining physician recommended an outpatient therapy program for J.M.F. Rather, Dr. Galvin's written report asserted that J.M.F. was a danger to others, that an outpatient placement was not appropriate for him, and that neither proper adherence to a program of medication nor the appointment of a legal guardian would obviate the need for commitment. R. at 52, 53. Furthermore, during Galvin's testimony at trial, he reasserted his opinion that J.M.F. would be better placed in Boys' School than released under outpatient program supervision if those were the only two options. R. at 257. Galvin recommended inpatient or

20.5, which has been superseded by I.C. § 12–26–14–1.

residential treatment for J.M.F. rather than an immediate return home. R. at 254. When the trial court asked whether Dr. Galvin would recommend placement in a secure facility or in an outpatient program, he recommended a psychiatric hospital. R. at 260.

Furthermore, the record reveals that Aundrea Brooks of South Central was subpoenaed to testify at J.M.F.'s hearing. R. at 31. However, no representative appeared from South Central. R. at 279. The record contains no evidence that J.M.F. would be guaranteed immediate placement in the program. Thus, the trial court order was not based upon either the recommendation of a physician required by I.C. § 12–26–14–1 or the guarantee of immediate placement in an outpatient program as required by I.C. § 12–26–14–2.

For all of the above reasons, we find that the trial court did not comply with the statutory requirements for commitment of a mentally ill person to an outpatient facility. Thus, we reverse and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, J., and STATON, J., concur.